Case is 23-11417, Linda Banks v. Marketsource, Inc. Ms. LaGriega, you have saved five minutes for a riddle. Is that correct? Yes, Your Honor. You may begin when you're ready. Good morning, Your Honors, and may it please the Court. I'm Cheryl LaGriega here on behalf of the plaintiff, Linda Banks, in the matter below. We're here today for two reasons. We think that the District Court erred in granting summary judgment to Defendant Marketsource on Ms. Banks' FMLA interference and retaliation claims. And we're also here because we believe that the District Court abused its discretion when it denied Ms. Banks' motion for a new trial on her race discrimination claims when the errors, when you look at the cumulative errors in the case, that Ms. Banks was substantively harmed by the errors. Can I ask you just sort of a table-setting question with respect to the first piece of your argument? Does it really sort of boil down to timeline? Because, so as I understand, there are two theories here. One is sort of the intermittent leave. One is the extended leave. I don't think there's any dispute that the decision to fire her was made between those two things, right? So after the supposed request for the intermittent leave, but before the request for the extended leave, right? That's right, Your Honor. And so now the question becomes, were you pursuing in the District Court the theory of intermittent leave or not, right? Did you plead that or not? That is what the District Judge based his opinion on. Why is that not the right analysis? It's not the right analysis. First of all, under 29 CFR 825-300B, all absences for the same serious health condition are considered as a single leave. So I think, you know, here we have hypoglycemia as the serious health condition, but I think it's easier probably to think of it in terms of something like cancer, where someone's getting chemotherapy and they're taking intermittent leave and they're working occasionally, but then they're so sick that they go on continuous leave. That is all one leave. Here, it's undisputed that no certification was turned in until June 13th, but that's only because on June 1st, when Ms. Banks shared that she was suffering these hypoglycemic incidences and needed breaks, Mr. Walter told her to speak with Human Resources, which she did on June 2nd. Ms. Urban-Harris told her to bring a doctor's note relating to the time off that she needed, which she did on June 3rd. Ms. Urban-Harris admits she didn't ask for FMLA certification at that point because she doesn't do so when an employee's not leaving the building. On June 6th, the breaks were approved by Ms. Urban-Harris, and she notified Mr. Walter and Mr. Pomplin, Ms. Banks' supervisor, that the breaks would be approved. And then on June 8th, after Mr. Pomplin sent an email saying, can I monitor her breaks, should I keep track of all these breaks that are for a health condition that he knew about, Ms. Urban-Harris said, yes, track the breaks. In that same email chain, which is document 33-39, he then says, hey, can I fire her? Yep, you've got permission to fire her on June 8th. So within days of turning in a doctor's note for the serious health condition— I guess maybe I'm confused, but my understanding is when you look at the complaint, is that you're not really, you were not, the complaint doesn't make any reference to the June 3rd intermittent leave, alleging only that the plaintiff took approved FMLA from June 13th, 2016 to July 22nd, 2016, which is the complaint paragraph 37. Isn't that accurate? That's not completely accurate, Your Honor, no. There are statements of fact 32-35 that talk about the hypoglycemic episodes, reporting it on June 1st, needing breaks for those hypoglycemic episodes and turning in a doctor's note. And when you look at count one, which is the interference claim, and count two, which is the retaliation claim, it doesn't talk about continuous leave at all. They're very generic counts, there's no doubt. But the bottom line on that is, too, that theories of liability are not the same as claims, right? And here, again, when you look at the CFR, all absences for the same leave are considered a single leave. Well, but, so what about this case that we have? And I think I know what your response is to this Hurlburt case, right? So, you know, there it's, it was different from this case in the sense that the one sort of leave bucket was for personal medical care, right? The other leave bucket was for a parent's medical care. But didn't we, as part of the rationale of that decision, didn't we say we looked to see whether there are different statutory sources for these claims? And here, there are different statutory sources, right? I mean, here, if anything, there's like a little bit more statutory separation between the two claims than there was in Hurlburt. Because at least in Hurlburt, everything was within 2612A. Here you've got one claim is within 2612A and the other is within 2612B, right? So, I mean, if we're looking at statutory source, isn't this Hurlburt-ish? That's not exactly right. Okay. Because the statutory source for interference and retaliation is the same statutory source. It's the prohibited acts section, which is 2615A1. And A1 applies to both interference and retaliation claims. So, I understand that that's what the lower court relied on here. But this is very different from Hurlburt. In Hurlburt, the plaintiff had his own serious health condition, which he took leave for. Summary judgment was denied in the case with respect to his own serious health condition for his interference and his retaliation claims. Here, on the other hand, or in Hurlburt, he tried to add on as part of his claim, care for a family member. That is very different and is a different statutory section. Here, we're talking about, and by the way, in the complaint, what we cited was the FMLA generally and not the statutory sections at all. But we are talking about 2615A1. It applies to both interference and retaliation. I promise I'm not playing on my phone. I'm going to pull up the statute just so I can take a look at it with you. No, it's okay, Robert. Don't wait on me. Go ahead. I think the other point that's really important is the notice issue with respect to this claim. It is not clear to me how the lower court could have possibly come to the conclusion that there wasn't notice, that this continuous course of leave for hypoglycemia, whether it be intermittent or continuous leave, but is a single course of leave. The defendant wasn't on notice when, if you look in our initial brief at page 32, footnote 5, or 42 of the ECF file, we cited every document site, including starting with plaintiff's deposition, where she was asked about her June 1st report of hypoglycemia and need for breaks, about her meeting with Ervin Harris in which Ervin Harris told her, You don't look dizzy to me. You don't look like you're walking into walls. And then Ervin Harris asked for a doctor's note. She immediately provided it. If Ervin Harris had asked for a certification, she would have immediately provided it. It literally took less than 24 hours. Okay, so can I ask you just briefly, now that I've got this pulled up on my phone, technology is a wonderful thing. So 26, as I read it, 2612A is titled in general, right? And it's about leave generally. The sort of leave that I think I would call continuous leave, ordinary FMLA leave. And then 2612B, leave taken intermittently or on a reduced leave schedule. Those two things seem different to me. One of them is the continuous leave request that you made, long term, and the other is for the intermittent leave. They seem to exist in separate subsections of the statute. But if you look at 29 CFR 825-300, it says, All FMLA absences for the same qualifying reason are considered a single leave. So breaking it out into intermittent and into continuous, by the way, which are theories of liability and not claims. What did you just reference? The CFR? Yes, 29 CFR 825-300B. But that also says intermittent leave or reduced leave schedule. That doesn't refer to continuous leave. It refers to all leave, Your Honor, and all leave for a single qualifying reason is considered a single leave. There wasn't a different health issue here. There was a health issue that got exacerbated by Ms. Banks' treatment at work. And I think maybe fundamentally at the bottom line of all of this is there are theories of liability and not claims. The claims here are, did MarketSource violate the FMLA by interfering with Ms. Banks' rights under the FMLA and by retaliating against her for taking FMLA for her serious health condition, her hypoglycemia? At the end of the day, I think that's the bottom line here. And it's clear they're unnoticed. There's plenty of sites from the depositions that they knew that this was what this case was about, that was she, was her leave interfered for with and was she retaliated against for taking leave? We have plenty of cases, though, that say you can't add to your complaint in summary judgment. And that isn't necessarily limited to whether the claims are different. It's talking about factual allegations. For example, GeorgiaCarry.org versus Georgia is a case where we rejected a party's addition of facts in their summary judgment motion that weren't in the complaint. Your Honor, I am not familiar with that case, and all that I can respond to that is we always learn facts in discovery. But the issue is that when you write summary judgment, I don't know a single district court judge who has a discovery schedule or a pretrial order that doesn't say all discovery needs to be concluded before the motion for summary judgment is submitted. I mean, do you know of one? I don't. And the reason is because discovery needs to be completed in order then for decisions to be made as to whether or not a party is going to proceed with a motion for summary judgment, maybe on all claims or some claims or none of the claims. So it is the point of a summary judgment is at that point discovery is closed. That's right, Your Honor, and this all came out in discovery before summary judgment, so I'm not clear. I understand, but the complaint at that moment in time already – anything other than continuous leave from – it started on July – or June 13th, I think. Your Honor, I don't think the complaint addressed continuous leave at all. It talked about the course of the leave starting on June 1st. Okay. But it did all come up in discovery, and it's in our brief.  Good morning. May it please the Court. I had to look at my watch to see if it was morning or not still. My name is William Gorham, and I'm here today on behalf of Appellee MarketSource. Opposing counsel mentioned in her argument a moment ago that MarketSource knew what this case was about. As the Court acknowledges to its questions, it's less about whether MarketSource knew somehow what the case was about and whether it was pled, what was in the pleadings, what were the claims that MarketSource was dealing with, understood, did discovery about, and ultimately argued on summary judgment. Judge Lagoa mentioned the pleading, the complaint itself. That's the right place to go back to look for this issue, right, because we're talking about whether it was pled or not. And if you look at the pleading, paragraph 37 to Judge Lagoa's point says, Plaintiff took approved FMLA leave from June 13, 2016 to July 22, 2016. Opposing counsel says, well, it doesn't mention continuous leave. I'll agree. The complaint doesn't use the words continuous leave. But I'll also suggest that if you read this complaint, it's not a very complicated complaint, as complaints go. It's very clear that that is the only leave that's being discussed. And when you talk about a leave that is six weeks, that is, as you said, Judge Newsom, earlier, ordinary FMLA leave under that general section of 26 U.S.C., I'm sorry, 29 U.S.C., 2612A. That is the ordinary leave. That is a continuous leave, what we think of as a continuous leave. Opposing counsel said when she was asked whether the intermittent leave or the 30-minute breaks were somewhere in the pleading, and she said they were. She said they were. She said they were in paragraphs 33 through 35. I encourage you to go back and read those. I won't read them to you now for lack of time. But there's no mention. There's no hint. There's not a speck within those averments that have anything to do or allude to or suggest it could exist. If there was a 30-minute leave, I'm sorry, 30-minute break required, some sort of intermittent leave, or that any other part of the act could potentially apply. That's just not true. I don't think she intended to be deceitful to the court, but what she said is just absolutely false. Importantly, there is nothing in the complaint that would give us any indication that they were talking about anything in terms of a leave, a protected leave for which retaliation could have existed, other than the leave they very clearly defined in paragraphs 36 and 37 of the complaint. If you then look at the counts 1 and counts 2, which are FMLA interference and FMLA retaliation respectively, those counts consistently, they're very short. They're only one page each. It won't take you long to read them. And they very consistently refer to the leave, the only leave that's discussed in the complaint. Now, they make no argument. I think this is essentially conceded that the FMLA claim based on the continuous leave should somehow survive or should have survived summary judgment. That's not really even contested because it was very clear on the summary judgment record that the decision to terminate made on June 8th predated the request for continuous leave. Everybody knows that. That's why only in response to our summary judgment motion, when they saw that problem and the fate of their FMLA claim, did they for the first time come in and say, well, wait a minute, it's the same sort of health issue and there's these other facts that were sort of there in discovery that we talked about in these documents. Therefore, intermittent leave is part of our case. It's included within our claim. It's just not accurate. It does come down to a pleading question. She says we shouldn't be surprised. Unfortunately, that's not really the standard for her purposes. Judge Ray, in citing the Hurlburt case that you asked about, Judge Newsom, said that it was impermissible for them to try to establish a new statutory basis. They want to say, look, it's just facts. We're just talking about facts. We're just talking about more facts. There was another doctor who came earlier and then she requested leave and everybody knew she had a health condition, hypoglycemia. That's not the point. The point is, sure, you don't have to put every single fact in your pleading perhaps, but you can't have a new statutory basis. Well, but it depends how we define statutory basis. In Hurlburt, the leave was because of the plaintiff's personal health but also his mother's health. Here, the leave is being requested under 2612A1D for her own serious health condition. So is it really a different statutory basis or does it just pertain to how she exercises leave for the same reason? Judge, I'd suggest that I do appreciate that difference with Hurlburt, but we are talking about two separate statutory bases. We're talking about, in the first instance, 2612A, which is the general provision that deals with, as Judge Newsom called it, ordinary FMLA leave. It's when you're unable to perform your job and you can get up to 12 weeks off because you're unable to perform your job. 29 U.S.C. section 2612B1 deals separately with this concept of intermittent leave. They're very, very different, fundamentally different, not just in separate statutory sections, but they're fundamentally different. The second of which, the intermittent leave in this case, deals with situations where you might need something less than a complete absence for work, or for an extended period of time. In this case, for example, they cite to a doctor's note that she provided somewhere along the way that says, I have it here, might be useful to cite to it for you. It's document number 3311. This is the primary basis of the facts, they say, that establish we knew that there was this need for intermittent leave, 3311. That doctor's note says that she returned to work status, full duty, prognosis good, current treatment, work on your diet. And it says restrictions, allow 30-minute break, full duty work. That's dramatically different than I can't work at all. I cannot perform my job. I'm unable to perform my job than normal FMLA leave. Very different. I'd suggest there's a serious question in this case as to whether that would even qualify for FMLA leave. Even under the intermittent leave provision of the FMLA, in part because this is a person that was a salaried employee, 30-minute break? If and when hypoglycemia occurs? I mean, some people might just call that lunch. So, sure, I mean, I can take a 30-minute break. I'm a salaried employee at my law firm. If I want to take a 30-minute break, I can take a 30-minute break. I'm not sure that arises to the level of anything. An ADA accommodation, intermittent leave? I don't know. I do know this, though. If we'd been given notice that that was part of their case, we would have looked very closely into that. We would have had enough. They say we waived this argument, by the way. Well, we waived it. It's a little bit ironic, isn't it? We didn't raise it at summary judgment. Well, the reason we didn't raise it at summary judgment is because we didn't know it was part of the case. Only once they put it into their opposition brief at the summary judgment stage did we come back in reply and say, wait a minute, this doesn't work. Had we been given that opportunity, to Judge Lagoa's point earlier, we would have conducted discovery. There were discovery deadlines. There were deadlines to amend the pleadings to give us notice that this is something you're arguing. And we could have fully developed a record around this issue. We could have done a lot of neat analysis about whether this is the kind of thing that even qualifies for intermittent leave under the FMLA or not. We could have explored the facts about what she actually told them and what was asked of her, whether she was given this leave, whether she wasn't given the leave. None of that happened because it wasn't part of this case. You're talking about the intermittent leave. Obviously, she was given continuous leave. The continuous leave, absolutely. But the continuous leave piece, I believe, is essentially irrelevant now. And I don't even think anyone's arguing to the contrary. So, yes, the intermittent leave, which is the thing that they're saying should have kept this alive, that should be remanded so she can go forward to trial on that. That's what I'm talking about. Yes. Judge McGill. In the end, the Kroger case was different in the sense that he was talking about his own condition and his mother's conditions. I'm not sure that is a distinction that really matters here because, ultimately, you still are talking about two different statutory bases. And if you look at the Hengrae case, I hope I'm saying that close to right, also with an 11 certificate, opposing counsel said during the argument that this was not a different health issue. It was the same health issue. Maybe. First of all, I'd say maybe. If you look back at the continuous leave health certification that was provided by her health care provider in this case, he talks about a lot of different things that led to the need to be gone from work. Keep in mind, the doctor's note that's under 3311, document 33-11, that says no restrictions, full duty, watch your diet. That's very different in terms of the scope of the health issue. Of course, we didn't get to explore that either, perhaps, right, than the need to take the leave altogether. I would also suggest that even if you want to say those are the same, same health conditions that continues throughout, look at the Hengrae case. That case also dealt with, it was affirmed at the 11th Circuit for different and additional reasons, but the district court addressed this issue and it's very, very similar in the following way. That case also dealt with a similar, the same exact, actually, health condition that that individual had. That individual had pled a continuous leave, a normal, to use Judge Newsom's term, FMLA leave. That claim was fallen apart on summary judgment for various reasons based on the record that was before the court. And what did they do? In opposition to summary judgment, they came in and said, oh, did we say continuous leave? We meant intermittent leave. Or at least that was there. It was sort of there. You all knew about it. And the court in that case said, no, that doesn't work. You can't change the statutory basis. Some have referred to it as factual predicate. I'd suggest those are probably synonymous in this context, but you can't change that statutory basis at this juncture. Magistrate Anand issued a report and recommendation on this. Judge Gray, adopting it, did his own additional analysis. I think it's very sound. I know you'll read it. And we suggest that that absolutely shouldn't be firm. I want to make another point related to the summary judgment issues. So there's two sort of categories of things that are at issue on appeal. One is the summary judgment rulings. The other has to do with issues that occurred at trial, more typical things, right? Primarily evidence that was allowed into trial that they argue shouldn't have. And there's a whole wide variety of those things that we're going to have nowhere near enough time to talk about today. But I want to make one overriding point that relates to all of those first. We argue at summary judgment that all of the claims in this case should have been dismissed. The FMLA claims were dismissed on summary judgment. That's what we've talked about so far this morning. The Title VII claims were also addressed. At the time, the pleading included a Title VII claim, a race-based Title VII claim to be specific, for retaliation and also termination. The retaliation claim was dismissed. And it was dismissed because the evidence was that she never put her employer on notice that she had any concerns about race. In fact, in her deposition, she testified that she wanted to make sure that her employer did not even think she was complaining about race. Well, that was the end of her retaliation claim. And that claim was dismissed by the district court. The remaining claim, though, that had to do with termination based on her race, although both Magistrate Anand and Judge Ray said that the evidence was very thin, they both found it was sufficient. And they found it was sufficient to at least get to a jury based on a convincing mosaic analysis. I'm not here today to debate whether that's a good standard, bad standard. It doesn't really matter. For purposes of today, my point is very simple. Our position is the evidence was not sufficient. It's in the record. I won't go through each of the pieces. It's in the record. It's in the briefs. It wasn't sufficient under the convincing mosaic standard to allow this case to get to a jury. And it wasn't sufficient to allow the jury to determine either that Ms. Banks' supervisor had a racial animus or, perhaps even more importantly, that there was any causal connection between any racial animus he might have had and the decision to terminate. What I would ask at this point of the court is use this case as a way to provide a little more guidance to the bar in the Eleventh Circuit and the district courts perhaps in the Eleventh Circuit and maybe beyond as to where that line is. I would suggest this is well short of the line of establishing a sufficiently convincing mosaic to get to a jury. Maybe you'll conclude otherwise. I think it falls short. And it's to these kind of cases we look when we're making decisions on how to handle cases, whether to settle cases, whether to go to trial. The court has said this is enough or this is not enough. I'd ask that you take a good look at this one. I don't think it was sufficient. I think summary judgment should have been granted on that issue as well. And this is a bonus for you guys. If you agree with me, you don't have to decide any of the other issues regarding what happened at trial because there wouldn't have been a trial in the first place. Obviously, I have no time to get into all the evidentiary issues at trial. If you have questions, I'll try to answer them. Otherwise, that's what I have. Thank you. Thank you. Thank you. I want to address Mr. Corum's last argument first, which is, hey, revisit summary judgment after we've had a trial. I think the case law is clear in Ortiz v. Shorten and Lynn v. UPS that you can't do that. So he may want you to, but there's been a trial on the merits. That's it. There's no appeal of that summary judgment order. With respect to... I want to respond to... Can I ask you just one question before we move on from that? Sure. So he's dismissed his cross appeal and now just says, I'm arguing an alternative basis for affirmance. Is that, you think, likewise forbidden? Yes. By the Supreme Court. Okay. And the site is 562 U.S. 180. All right. I wanted to address, Judge Pryor, your question about using facts at summary judgment that you've learned during discovery. We've cited two plumbers and steam fitters versus Vertex. Complaint need not specify in detail the precise theory giving rise to recovery. All that is required is the defendant be on notice as to the claim. Then there's Johnson versus City of Shelby. In Johnson versus City of Shelby, 574 U.S. 10, they didn't even say they had a 1983 claim and the Supreme Court said it was fine that they had a 1983 claim. An imperfect statement of the legal theory supporting the claim does not block that claim. Holsey versus Pryor has rights. Claims should not be confused and conflated with theories of liability. Corbett versus Walgreens, 2015 U.S. District Lexus, 4918 at 6 at Star 9. Plaintiff did not assert new claims, only additional facts to support her claims, and any objection as to notice was alleviated through discovery and deposition testimony. And I want to talk about this deposition testimony. Correct, but again, when you're doing discovery and you're taking depositions, one presumes that you're looking at the pleadings. If you're the plaintiff, you're pursuing, you want to make sure that you take off all the elements that you need to make for purposes of pursuing your claim, and the defense on the other side wants to make sure and ascertain that you're not hitting your elements so that they can then move for summary judgment. But again, there's a big difference between asking for continuously and asking for intermittent leave, because if someone is not giving you intermittent leave, then the other side has a right to, number one, figure out whether or not the request that you've made for intermittent leave, is that even statutorily correct? Well, Your Honor, first of all, I do need to address that, and I'm really glad you brought that up. In our brief, we cut and pasted their approval of Ms. Banks' leave, their approval of her FMLA certification at Doc 32-2, page 27, covered leave that started June 3rd. And it said that it approved all that leave under the FMLA. So they knew. They knew that time starting June 3rd was covered by her FMLA certification. So they can't go back now and say, oh, we didn't know. They did, they approved it. They can't say it wasn't a serious health condition because they already approved it. But I want to talk about discovery, because they did ask the questions about it in discovery. They asked about it in every deposition. And if you look at page 9 through 11 in our reply brief, in Ms. Banks' deposition, they asked her about her hypoglycemia, her need for intermittent breaks in early June 2016 repeatedly. Doc 34, page 80, page 83, page 86, page 164, included confirmation that her initial doctor's directives for breaks and longer leave if she needed was because of her hypoglycemia exacerbated by stress was the same reason she went on full-time leave. Wait, but isn't that talking about the intermittent breaks, the 30-minute breaks that the doctor's note said she needed? At least 30 minutes, yes. Okay. Yes. Is that intermittent leave, or is that just request for breaks? Well, it could have been intermittent leave if she had been given the certification. She was not given the certification at that time. She was just asked for medical documentation. Right, but again, that goes to – I mean, I think you're kind of conflating. You have, like, a right to do – they have a right to procedural notice to know what the charges are, the allegations made against their client, okay? And the way, the proper procedure for that is that you seek to amend your complaint to add a new claim because it would be a new claim seeking intermittent leave saying they didn't give you the intermittent leave that you requested. Your Honor, respectfully, it is not a new claim. It's a new theory of liability, and there is a difference. The claim has always been the same. You interfered with my FMLA leave. You interfered. Oh, but there's FMLA leave that could be continuous, the 12 weeks. We didn't give you the 12 weeks. We only gave you six weeks. Or the FMLA leave that I requested and my doctor said I needed these intermittent leaves. Your Honor, they're the same. She had hypoglycemia. They're not the same because they're statutorily different, are they not? Well, the statute is the FMLA, and there's one statute. Correct, but there are different subsections of the statute. There are similar sections that apply to them about protected acts, and there are separate sections that apply to them. But the point on this is when they certified her leave, they certified it back to June 3rd, which included the 30-minute breaks. Thank you, Your Honors. Thank you. We'll move on to our last case.